# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MONA MASON,

        **Plaintiff,**

v.

        Case No. 06-14032

        HONORABLE DENISE PAGE HOOD

CITY OF LIVONIA,

        **Defendant.**

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment (Dkt. #9, filed on July 23, 2007). Plaintiff filed a Response on August 30, 2007. Defendant filed a Reply on September 20, 2007. A hearing on the Motion was held on November 7, 2007.

### II. STATEMENT OF FACTS

Plaintiff Mona Mason is an African-American female who was employed by Defendant City of Livonia from August 12, 1996 until her alleged constructive discharge date of April 18, 2005. In 2000, Plaintiff became an Equipment Operator I and was assigned to tasks such as park maintenance. She was the only African-American and female in the position.

Plaintiff commenced this action against the City of Livonia on August 23, 2006, in the Circuit Court for the County of Wayne. The Complaint alleges race discrimination, sex discrimination, and retaliation in violation of the Elliott-Larsen Civil Rights Act and Title VII of the Civil Rights Act. The action was removed to this Court on September 13, 2006.

In the Complaint, Plaintiff alleges that she was treated less favorably than her Caucasian

male co-workers. Plaintiff cites seven examples of disparate treatment in the Complaint. These examples are as follows:

> A. Plaintiff was disciplined, on one occasion, for failing to properly lock up city equipment, failing to properly supervise seasonal employees while signing out equipment and taking bathroom breaks, and being uncooperative with her supervisor.
>
> B. Plaintiff was disciplined, on one occasion, for lodging a tractor trailer in the grass of a city park.
>
> C. Plaintiff was disciplined, on one occasion, for wearing dirty clothes to work.
>
> D. Plaintiff was disciplined, on one occasion, for being at a restaurant while on duty.
>
> E. Plaintiff was denied the opportunity to pick the seasonal employees of her choice.
>
> F. Plaintiff was deprived of a larger tractor trailer for hauling equipment.
>
> G. Plaintiff was deprived of a communications radio for approximately eighteen months.

(Compl. ¶ 14.) Plaintiff generally alleges that none of her Caucasian male co-workers were subjected to the same treatment. (*Id.*)

Plaintiff alleges that most of these instances of disparate treatment were retaliatory, occurring after she reported a sexual harassment incident against a co-worker, David Benson, in December of 2001. (Compl. ¶ 21-27.) Mr. Benson was disciplined for his sexual harassment of Plaintiff. After filing the harassment complaint against Mr. Benson, Plaintiff was warned by a female co-worker, and by Nick Calleja, that Plaintiff would be "watched." (Pl.'s Dep. at 47, 63.) Plaintiff alleges that

Mr. Benson is a personal friend of Nick Calleja. Mr. Calleja was Plaintiff's union steward when she reported Mr. Benson's harassing behavior. Mr. Calleja became Plaintiff's immediate supervisor in May of 2003.

In her Response to Defendant's Motion for Summary Judgment, Plaintiff cites two additional examples of retaliation. These examples are as follows:

> H. Plaintiff was orally reprimanded, on one occasion in March of 2002, for getting into a verbal altercation with Nick Calleja. (Resp. at 5.)
>
> I. Plaintiff was falsely accused by Mr. Calleja of yelling at a female co-worker in February of 2005. (Resp. at 9.)

Plaintiff reported a second and unrelated incident of sexual harassment against another co-worker, Bill Beckley, in September of 2004. However, after an investigation, Defendant found the second complaint of harassment to be unsubstantiated.

## II. STANDARD OF REVIEW

Summary judgment is proper if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988). The party moving for summary judgment bears the initial burden and need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adock v. Firestone Tire & Rubber Co.*, 822 F.2d 623, 626 (6th Cir. 1987). Rather, "the burden on the moving party may be discharged by showing . . . to the district court . . . an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met its burden of production, the nonmoving party must then go beyond the pleadings and by affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It must present significant probative evidence in support of its complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

When ruling on a summary judgment motion, a district court should view the evidence in a light most favorable to the nonmoving party. *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991), *cert. denied*, 503 U.S. 939 (1992). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

## III. APPLICABLE LAW

Plaintiff alleges race and sex discrimination in violation of the Elliott-Larsen Civil Rights Act ("ELCRA") and Title VII of the Civil Rights Act ("Title VII").[1] Michigan courts look to Title VII federal precedent for guidance in reviewing claims brought under the ELCRA. *Featherly v.*

---

[1] A three-year statute of limitations applies to claims arising from the ELCRA. *McGee v. Daimler Chrysler*, 472 Mich. 108, 113 (2005). The statute of limitations for an action under Title VII is three-hundred days measuring back from the date a plaintiff filed a complaint with the Equal Employment Opportunity Commission. *Boykin v. Michigan Dept. of Corrections*, 2000 WL 491512, at *2 (6th Cir. April 18, 2000). However, the Court is unable to address issue, as the parties have not provided exact dates for all of the events discussed in the pleadings.

*Teledyne Industries, Inc.*, 194 Mich. App 352, 357-358 (1992). To state of prima facie case of disparate treatment discrimination under the ELCRA and Title VII, a plaintiff must demonstrate that: 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position; and 4) others, similarly-situated and outside the protected class, were unaffected by the employer's conduct. *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 703 (6th Cir. 2007)*;Town v. Michigan Bell Telephone Co.*, 455 Mich 688, 695 (1997).

An adverse employment action involves a "materially adverse change in the terms of . . . [an employee's] employment." *Kocsis v. Multi-Care Mgt, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). A materially adverse change in the terms and conditions of employment:

> must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Crady v. Liberty National Trust Bank of Indiana*, 933 F.2d 132, 136 (7th Cir. 1993) (citations omitted); *see also Bowman v. Shawnee State University*, 220 F.3d 456, 462-63 (6th Cir. 2000). Requiring a employee to perform more work than other similarly-situated employees, combined with other factors such as heightened scrutiny and constructive discharge, may constitute an adverse employment action. *Ford v. General Motors Corp.*, 305 F.3d 545, 554 (6th Cir. 2002).

Similarly situated individuals "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them

for it." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). The similarly situated inquiry requires that employees be similar "in all *relevant* respects" and not similar "in every single aspect of their employment." *Kane v. Kelly Servs.*, 2006 U.S. LEXIS 21553, at *10-11 (E.D. Mich. Mar. 30, 2007) (Hood, J.) (citing *Ercegovich*, 154 F.3d at 353). The relevance inquiry "is done on a case by case determination of the court." *Id.*, at *11 (citing *Ercegovich*, 154 F.3d at 352).

A plaintiff may demonstrate discrimination – without having to show a tangible employment action or disparate treatment – by showing that the alleged discrimination created a hostile or abusive work environment. *Bowman*, 220 F.3d at 463. To establish sex or race-based hostile work environment claim, an employee must show that: 1) the employee is a member of a protected class; 2) the employee was subject to unwelcomed sexual harassment; 3) the harassment was based on the employee's race or sex; 4) the harassment created a hostile work environment; and 5) the employer failed to take reasonable care to prevent and correct any harassing behavior. *Hawkins v. Anheuser-Busch, Inc.*, __F.3d__, 2008 WL 423442, at *7 (6th Cir. Feb. 19, 2008).

To decide whether an environment was hostile or abusive, a court must "look at the totality of the circumstances." *Id.* Conduct that is merely offensive is not actionable. Harassing acts which are "ongoing, commonplace, and continuing" are more likely to be deemed hostile or abusive. *Id.*, at *8 (quotations removed).

Once a prima facie showing is made by the plaintiff, a presumption of discrimination arises which the defendant can rebut by articulating a legitimate non-discriminatory reason for its actions.

6

*Lulaj v. The Wackenhut Corp.*, 512 F.3d 760, 765 (6th Cir. 2008) (citing *Lytle v. Malady*, 579 N.W.2d 906, 915 (Mich. 1998)). The burden then shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the articulated reasons were a mere pretext for discrimination. *Id.*

A plaintiff's failure to present evidence sufficient to establish any prong of the prima facie discrimination case precludes a court from reaching the questions of whether the employer had legitimate and nondiscriminatory reasons for its conduct and whether those reasons were pretextual. *See Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 540 (6th Cir. 2002). More importantly, a plaintiff's failure to present evidence sufficient to establish any single prong of the prima facie case will result in summary dismissal of the plaintiff's discrimination claim. *Id.*

To establish a prima facie case of retaliation, an employee must establish that: 1) she engaged in protected activity; 2) the employer knew of the exercise of the protected right; 3) an adverse employment action was subsequently taken against the employee; and 4) there was a causal connection between the protected activity and the adverse employment action. *Hawkins*, __F.3d__, 2008 WL 423442, at *19.

**IV.  ANALYSIS**

A.  <u>Count I – Race Discrimination</u>

In the Complaint, Plaintiff alleges four instances of discrimination that resulted in discipline. Plaintiff alleges that she was disciplined for failing to lock up city equipment and properly manage seasonal employees; lodging her tractor trailer in the grass of a city park; being in a restaurant while on duty; and wearing dirty clothes to work. Plaintiff alleges two additional instances of discrimination-based discipline in her Response. She alleges that she was disciplined for engaging in verbal altercations with Nick Calleja in March 2002 and with a female co-worker in February of 2005. The Court analyzes these claims under the disparate treatment prima facie case, which

provides that Plaintiff must allege facts sufficient to demonstrate that: 1) she is a member of a protected class; 2) she suffered an *adverse employment action*; 3) she was qualified for the position; and 4) others, similarly-situated and outside the protected class, were unaffected by the employer's conduct. *Town*, 455 Mich at 695; *Clay*, 501 F.3d at 703.[2]

Plaintiff alleges that she was disciplined for failing to lock up city equipment. She also alleges that she was disciplined for failing to supervise seasonal employees while taking bathroom breaks and signing out equipment. She further alleges that her Caucasian co-workers were not disciplined for similar acts. Defendant contends that Plaintiff was never disciplined for these shortfalls in her job performance, and that, as a result, Plaintiff fails to establish the second element of the disparate treatment prima facie case, that she suffered an adverse employment action.

Defendant contends that advising Plaintiff in a December 10, 2003 annual review meeting that she needed to improve her performance in certain areas did not constitute discipline. (Mot. Summ. J. at 9-10.) Defendant supports its argument with Exhibit 14 to its Motion, a letter dated December 12, 2003, that it sent to Plaintiff which summarizes several points raised during Plaintiff's December 11, 2003 annual position review meeting. (Dkt. # 9-6 at 2-3.) The letter indicates several areas of improvement for Plaintiff, including locking up city equipment, supervising seasonal employees while taking bathroom breaks, and being uncooperative with her foreman. It appears that Defendant mailed the letter to Plaintiff, because she refused to sign-off on the review after the December 11th review meeting. (Pl.'s Dep. at 50.)

Plaintiff asserts that she suffered an adverse action, because she had previously been "wrote

---

[2]The parties do not dispute that Plaintiff establishes the first and third elements of the disparate treatment prima facie case. She is African-American and she is qualified for the position of Equipment Operator I. The parties are not in agreement as to whether or not Plaintiff has alleged facts to demonstrate the second and fourth elements of the prima facie case.

8

. . . up" for the incidents. (Pl.'s Dep. at 51.) According to Plaintiff, "write up[s are removed from an employee's file] . . . after six months." (*Id.*) Assuming that Plaintiff satisfies the adverse action prong of the test with this assertion, she nevertheless fails to satisfy the disparate treatment prong of the test. *See Hollins*, 188 F.3d at 658 (noting that a protected-class-member plaintiff "must produce evidence that . . . for the same or similar conduct, she was treated differently from similarly situated non-minority employees"). She has not alleged facts sufficient to demonstrate that her similarly-situated Caucasian male co-workers were not subjected to the same treatment. She has made general allegations that she was treated differently than her similarly-situated Caucasian male co-workers, but her subjective accusations of disparate treatment – without more – are insufficient to survive summary dismissal. *Collins*, 188 F.3d at 660.

Plaintiff alleges that she was disciplined for lodging a tractor trailer in the grass of a city park, and that her Caucasian co-workers were not disciplined for similar acts. Defendant contends that Plaintiff was not disciplined for the lodged trailer incident; rather, Defendant contends that Plaintiff was disciplined, in a legitimate and non-discriminatory manner, for an act of insubordination arising from the lodged trailer incident. (Mot. Summ. J. at 10.) Insubordination may constitute a legitimate reason for an adverse employment action, including termination. *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994). Defendant supports its contention with Plaintiff's deposition testimony. (Pl.'s Dep. at 161-62.) At deposition, Plaintiff testified that she was reprimanded after she refused to fill out an accident report for the lodged trailer incident. (*Id.*) Plaintiff asserts, however, that Defendant's disciplinary action for the lodged trailer incident was pretextual, because accident reports are normally not required "when your truck gets stuck." (*Id.*)

Assuming that Plaintiff's testimony at deposition demonstrates that she was subjected to an adverse employment action, she nevertheless fails to satisfy the fourth element of the prima facie

case. The fourth element of test requires Plaintiff to show that she was disciplined differently than her similarly-situated Caucasian male co-workers. *Clay*, 501 F.3d at 703; *Hollins*, 188 F.3d at 658. Here, Plaintiff has failed to allege any facts to demonstrate that her similarly-situated Caucasian male co-workers were not disciplined for similar acts of insubordination.

In arguing that an accident report was not required in this case, she has alleged, at most, facts demonstrating an arbitrary employment practice of Defendant. However, Defendant's failure to follow its own policies and procedures does not violate Title VII unless there is a showing of disparate treatment. *See Clay*, 501 F.3d at 703; *see also Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 346 (5th Cir. 2007). Viewing the facts alleged by Plaintiff in a light most favorable to her, the lodged trailer claim of discrimination must fail. *Policastro*, 297 F.3d at 540.

Plaintiff alleges that she was disciplined for wearing dirty clothes, and that her Caucasian co-workers were not similarly disciplined. Defendant contends that she was never disciplined for uncleanliness, and that, Plaintiff fails to establish that she suffered an adverse employment action. Plaintiff does not rebut Defendant's contention in her Response. At deposition, Plaintiff stated that she was "told . . . [that she] had worn dirty clothes to work" during her December 11, 2003 annual position review meeting. (Pl.'s Dep. at 50.)

Here, Plaintiff has failed to alleged facts sufficient to demonstrate that she was subjected to any adverse action for wearing dirty clothes to work. She has neither alleged nor provided any record of any disciplinary action. (Mot. Summ. J. at 10.) Even if she could establish an adverse action, she has not shown that she was disciplined differently than her similarly-situated Caucasian male co-workers. *Clay*, 501 F.3d at 703; *Hollins*, 188 F.3d at 658. Accordingly, her claim that Defendant discriminated against her based on race for wearing dirty clothes must fail.

Plaintiff alleges that she was discriminated against when she was disciplined for being in a restaurant for forty-five minutes while on duty, and that her Caucasian co-workers were not

similarly disciplined. Defendant concedes that Plaintiff was disciplined, but contends that her Caucasian male co-workers were similarly disciplined for the same incident. (Mot. Summ. J. at 10.) Defendant supports its argument with Plaintiff's written record of oral reprimand for the incident, as well as the written records of oral reprimands for the other workers involved in the incident. (Mot. Summ. J., Ex. 15; Dkt. #9-17 at 2-24.)

In the Response, Plaintiff concedes that a Caucasian male co-worker was similarly disciplined for the restaurant incident. (Resp. at 16-17.) However, Plaintiff argues that, unlike her Caucasian male co-worker, she was not in the restaurant for forty-five minutes. (Resp. at 9, 17.) Plaintiff further argues that Defendant's "false accusation and . . . subsequent discipline was merely pretext[ual.]" (Resp. at 17.)

Once an employer has posited a legitimate non-discriminatory reason for its actions, a plaintiff may demonstrate pretext by showing that the reason given by the employer "is ultimately found to be mistaken, foolish, trivial, or baseless." *Clay*, 501 F.3d at 714 (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir.1998)). If the plaintiff meets this burden and the defendant is silent in the face of the plaintiff's evidence, then the case proceeds to trial to weigh the evidence. *Id.*

Here, Plaintiff has failed to allege any facts to demonstrate that her discipline for the restaurant incident was "mistaken, foolish, trivial, or baseless." Defendant's reprimand was based on Plaintiff's violation of at least three departmental rules, including the prohibitions of: 1) taking coffee breaks longer than fifteen minutes; 2) assembling in restaurants or other places of business during work hours; and 3) loafing or loitering during work hours. (Def.'s Exhibit 15 at 2-3.) Although Plaintiff contends that she was in the restaurant for twenty minutes and not for forty-five minutes, (*id.* at 4,) this allegation, alone, does not render Defendant's actions mistaken, foolish, trivial, or baseless. Even if she were only in the restaurant for just twenty minutes as she alleges,

11

she nevertheless violated each of the departmental rules for which she was charged. Accordingly, this claim of race discrimination must fail. *Policastro*, 297 F.3d at 540.

In her Response, Plaintiff alleges two additional incidents of discrimination that resulted in discipline. Both incidents involve Plaintiff's participation in a verbal altercation with a co-worker.

The first altercation was with Mr. Calleja and occurred in March of 2002. (Resp. at 5.) As a result of the altercation, Plaintiff and Calleja "had to be separated." (Pl.'s Dep. at 28.) Mr. Calleja was Plaintiff's union representative at the time, and not her supervisor. (Pl.'s Dep. at 28.) According to Plaintiff, the altercation was provoked by Mr. Calleja when he spoke to her "like . . . [she] was trash." (Resp. at 4; Pl.'s Dep. at 27-30.) Plaintiff alleges that this incident demonstrates desperate treatment, because she believes that Mr. Calleja was the aggressor of the altercation, that management should have believed her version of the events, and that Calleja should have been similarly disciplined. (Resp. at 5.) Plaintiff did not grieve the discipline. (Pl.'s Dep. at 45.)

The second verbal altercation was with a female co-worker and occurred in February of 2005. (Resp. at 6.) Plaintiff was disciplined for the incident, but did not grieve it. (Pl.'s Dep. at 88.) Mr. Calleja was Plaintiff's supervisor at the time. (Pl.'s Dep. at 28.) Plaintiff alleges that this incident was "baseless." (Resp. at 9.)

These allegations of disparate treatment must fail, because Plaintiff has not demonstrated that Defendant's imposed discipline was "mistaken, foolish, trivial, or baseless." *Clay*, 501 F.3d at 714. Plaintiff has not shown that her discipline for these incidents was related to anything other than what Defendant has alleged – that she was disciplined for engaging with a verbal altercation with a co-worker. (Pl.'s Dep. at 29-30, 86-88.)

Plaintiff maintains that she was discriminated against as she was not permitted to pick the seasonal employees of her choice, even though her Caucasian-male co-workers were permitted to do so. Defendant contends that Plaintiff was not treated differently, because none of its employees

are permitted to pick the seasonal employees of their choice. In support of its argument, Defendant points to Plaintiff's own deposition testimony. At deposition, Plaintiff indicated that none of her co-workers were permitted to pick the seasonal employees of their choice. (Pl.'s Dep. at 152-53.) Plaintiff has not shown disparate treatment in this instance and her claim must fail. *See Hollins*, 188 F.3d at 658 (noting that to survive summary dismissal, she "must produce evidence that . . . she was treated differently from similarly situated non-minority employees").

Plaintiff maintains that she was given a less desirable tractor trailer than her Caucasian-male co-workers. Defendant contends that Plaintiff was not treated differently than Caucasian male employees. Defendant notes that at her deposition, Plaintiff acknowledged that the bigger trailer was only assigned to her when she was assigned to two large parks. Plaintiff herself articulated a legitimate, nondiscriminatory reason for the change in trailers with which Defendant does not disagree; namely, that the more desirable or larger trailer was only needed when she worked in large parks, and that the less desirable or smaller trailer was standard for working in smaller parks. (*Id.* at 156-58.) Plaintiff has not shown disparate treatment in this instance and her claim must fail. *See Hollins*, 188 F.3d at 658.

Plaintiff maintains that she was deprived of a communications radio for about eighteen months and that her Caucasian-male co-workers were not. Defendant disagrees. In support of its argument, Defendant again points to Plaintiff's own deposition testimony. At deposition, Plaintiff failed to allege facts to substantiate this claim; namely, she could not articulate the timing for which she was deprived of a new communications radio within a three-year period. (*Id.* at 158-60.) Further, Plaintiff indicated at deposition that she was never completely deprived of a communications radio; rather, she indicated that she was given several replacement radios, none of which were new. (*Id.*) Because Plaintiff has not shown disparate treatment, her claim must fail. *See Hollins*, 188 F.3d at 658.

B.     Hostile Work Environment

In order to establish a hostile work environment claim, Plaintiff must show the following: 1) she is a member of a protected class; 2) she was subject to unwelcomed harassment; 3) the harassment was based on her race or sex; 4) the harassment created a hostile work environment; and 5) Defendant failed to take reasonable care to prevent and correct any harassing behavior. *Bowman*, 220 F.3d at 463-64. To decide whether an environment was hostile or abusive, a court must "look at the totality of the circumstances. *Hawkins*, __F.3d__, 2008 WL 423442, at *7. Conduct that is merely offensive is not actionable. Harassing acts which are "ongoing, commonplace, and continuing" are more likely to be deemed hostile or abusive. *Id.*, at *8 (quotations removed).

The parties do not dispute that Plaintiff satisfies the first element of the hostile environment test. She is African-American. For the sake of argument, the Court assumes that Plaintiff can satisfy the second and fourth elements of the hostile environment test. That is, the Court assumes that Plaintiff's nine (9) alleged instances of improper conduct were unwelcome and abusive.

As to the third element, none of Plaintiff's previously stated claims of discrimination suffice to support a claim of harassment based on sex or race. None of Plaintiff's previously stated claims of discrimination implicate her race or sex. Although she alleges one instance of a remark that was related to her race or sex, that Mr. Calleja asked her why she was "going to the bathroom," (Pl.'s Dep. at 48,) the Court concludes this remark does not implicate race or sex.

Neither can Plaintiff establish that fifth element of the test, that Defendant failed to take reasonable care to prevent or correct the alleged harassment. To prevail under the fifth prong, she must show that Defendant knew or should have know about the harassment, yet failed to take prompt and appropriate corrective action. *Hawkins*, __F.3d__, 2008 WL 423442, at *13. An employer's corrective action is generally adequate if it is reasonably calculated to end the harassment. *Id.*, at *15. Here, it does not appear that Plaintiff ever reported any of the alleged

14

instances of disparate treatment to Defendant other than the claims stemming from her December 10, 2003 annual review meeting. Defendant's failure to respond, therefore, cannot be deemed unreasonable. *Id.* Plaintiff did report two instances of sexual harassment to Defendant. However, the two instances of sexual harassment were corrected by Defendant and are not the basis of this action.

    C.    <u>Retaliation</u>

Plaintiff's retaliation claim also fails. To establish a prima facie case of retaliation, an employee must establish that: 1) she engaged in protected activity; 2) the employer knew of the exercise of the protected right; 3) an adverse employment action was subsequently taken against the employee; and 4) there was a causal connection between the protected activity and the adverse employment action. *Hawkins*, __F.3d__, 2008 WL 423442, at *19. An employer will be liable for a co-worker's retaliation if supervisors or managers have actual or constructive knowledge of the retaliation and they condone, tolerate, or encourage the retaliation. *Id.*, at *22. An employer will also be liable for a co-worker's retaliation if supervisors or managers have actual or constructive knowledge of the retaliation and they inadequately respond to the plaintiff's complaints of the retaliation. *Id*.

"[T]he adverse employment action requirement in the retaliation context is not limited to an employer's actions that solely affect the terms, conditions or status of employment, or only those acts that occur at the workplace. The retaliation provision instead protects employees from conduct that would have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.*, at *19 (quotations and citations omitted). "The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern & Sante Fe Fy. Co. v. White*, 126 S. Ct. 2405, 2414 (2006). The standard for judging harm is objective, because "[a]n objective standard is judicially administrable." *Id.* at 2415.

The Court finds *Burlington* instructive on the issue of whether or not, under the facts of this case, Plaintiff alleges a prima facie case of retaliation. In *Burlington*, the plaintiff, who was a forklift operator, was transferred to a position that was widely known to be a much harder and much dirtier position after she complained that her supervisor had sexually harassed her. *Id.* at 2406. Later, after the plaintiff complained about her transfer, she was suspended for thirty-seven days without pay for insubordination. While the plaintiff was eventually given back pay for this suspension, the United States Supreme Court noted the plaintiff and her family were forced to live without an income for thirty-seven days. *Id.* Because of the obviously downgraded conditions of the plaintiff's job as well as the thirty-seven day suspension, the Supreme Court found that a reasonable juror could have found that the defendant's actions against the plaintiff were objectively harmful. *Id.* at 2417.

Construing the facts alleged by Plaintiff in a light most favorable to her, she has nevertheless failed to demonstrate a prima facie case of retaliation, because she has not shown an adverse action of the type examined in *Burlington*. *E.g.*, *McDaniel v. Potter*, 2007 WL 3165807, at *9 (N.D. Ohio Oct. 26, 2007); *Allen v. Ohio Dept. of Job and Family Services*, 2007 WL 2815569, at *14 (S.D. Ohio Sep. 25, 2007). Although Plaintiff has alleged that she has formally opposed Defendant's violation of the statute and that she was twice informed after filing the first complaint in 2001 that she would be "watched," she has failed to demonstrate any retaliation that produced any objective "injury or harm." *Burlington*, 126 S. Ct. at 2414. As discussed in the above analysis, Plaintiff's subjective discrimination claims cannot withstand Defendant's Motion for Summary Judgment. Additionally, the Court finds it noteworthy that despite the many instances of retaliation that Plaintiff alleges flowed from her discrimination claim against Mr. Benson in December of 2001, she was not dissuaded from filing a second sexual harassment complaint in September of 2004. Given

that the purpose of the Title VII retaliation provision is to protect employees from conduct that may dissuade an employee from filing an initial or subsequent claim, see *Hawkins*, __F.3d__, 2008 WL 423442, at *19, Plaintiff's own conduct suggests that relief under the Title VII retaliation provision is not warranted under the facts of this case.

## IV. CONCLUSION

Based on the foregoing,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Dkt. #9, filed on July 23, 2007) is **GRANTED**.

S/Denise Page Hood<br>
Denise Page Hood<br>
United States District Judge

Dated: March 31, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2008, by electronic and/or ordinary mail.

S/William F. Lewis<br>
Case Manager